IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| DEEDE L. COPELAND, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: 8:17-cv-01566-PWG |
| VILMA DAPKUTE et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Deede L. Copeland ("Copeland") signed a settlement agreement waiving her right to pursue employment-discrimination claims against a former employer and various colleagues and supervisors. Mot. to Enforce 2, ECF No. 45. A right-to-revoke provision allowed Copeland to withdraw her assent to the agreement by delivering an express written revocation to a specifically named individual (Kristin Arnold) at a specifically designated physical address (the one listed in paragraph 8 of the agreement) no later than eight days after she signed the agreement. Copeland emailed her employer hours before the deadline, expressing her wish to "revoke the signed agreement at this time," Email to Emcor HR, ECF No. 43-1, but a hard-copy written revocation was not delivered until the following day, *see* Mot. to Enforce 3-4. The primary question here is whether the attempted revocation was effective.

"It is beyond cavil that, generally speaking, the express terms of a contract bind the parties and courts should not meddle in the affairs of the parties by modifying terms of the agreement to assist a disadvantaged party." *Baltrotsky v. Kugler*, 910 A.2d 1089, 1096 (Md.

1

2006). Applying principles of Maryland contract law, I conclude that Copeland failed to timely revoke her assent to the settlement agreement in the manner it required. Copeland's motion to reopen the case, ECF No. 43, is granted, but only for the limited purpose of ruling on Defendants' motion to enforce the signed settlement agreement, ECF No. 45. *See Collins v. Bank of Am. N.A.*, No. PJM 06-1411, 2010 WL 2892559 (D. Md. July 20, 2010). The Court grants Defendants' motion.

The Court also grants the defense's motion to place the settlement agreement under seal, ECF No. 55, but only in part. As several portions of the agreement are germane to my decision on the motion to enforce, I direct Defendants to file a redacted version of the agreement in accordance with this Memorandum Opinion.

## FACTUAL BACKGROUND

Copeland initiated this suit against her then-employer, Emcor Services Combustioneer Corp. ("Combustioneer"),[1] and several executives (collectively, the "Defendants") on June 7, 2017.[2] Compl., ECF No. 1. Her Complaint, filed *pro se*, accused Defendants of discriminating against her on the basis of her race, age, and disability and of maintaining a hostile work environment. *Id.* at 3. The Complaint asserted claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17; the Age Discrimination in Employment Act

---

[1] Combustioneer is part of the Emcor Group, Inc. ("Emcor"), a Connecticut-based electrical and mechanical construction and facilities services firm. Emcor Group, Inc., Annual Report (Form 10-K) (Feb. 22, 2018). Copeland's Complaint refers at times to her dealings with Emcor's corporate offices and with another of the company's affiliates, Emcor Government Services. Copeland resigned from Combustioneer in December 2017. Mot. to Reopen 2, ECF No. 43.

[2] The initial Complaint names five individual defendants: Chief Financial Officer Vilma Dapkute, Construction Manager Kevin Jensen, Vice President and General Manager Patrick Baldwin, Human Resources Representative Yusuf Sharp, and Emcor Government Services Vice President of Human Resources Kristin Arnold. Compl. 2-3. Copeland's Amended Complaint names Combustioneer as a corporate defendant. Am. Compl. 1, ECF No. 3.

of 1967 ("ADEA"), 29 U.S.C. §§ 621-634; and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112-12117.

In October 2017, after the parties agreed to enter into settlement discussions, this Court ordered the appointment of pro bono counsel to represent Copeland "for the limited purpose of representation at a settlement conference." October 2017 Order, ECF No. 28. The Court referred the case to a United States magistrate judge the following month. Order of Reference, ECF No. 38. A settlement conference was to follow on April 6, 2018, but that became unnecessary because on April 3, 2018, the parties reached an agreement to settle the case. Mot. to Enforce 2. This Court promptly issued a Local Rule 111 Settlement Order dismissing the suit. Settlement Order, ECF No. 42; *see* Loc. R. 111 (authorizing the court to enter an order dismissing a case upon notification that the case has been settled). The Order, dated April 4, 2018, stated: "The entry of this Order is without prejudice to the right of a party to move for good cause within sixty (60) days to reopen this action if settlement is not consummated." Settlement Order.

Copeland signed the agreement on April 13, 2018. Settlement Agreement ¶ 8, ECF No. 54. Under its terms, Copeland agreed to release "any and all claims which she may have" against Defendants, including any claim of discrimination, harassment, or retaliation under Title VII or the ADA, as well as all claims under the ADEA. *Id.* ¶ 4(a). The agreement affirms that the release "is fairly and knowingly made" but reserves Copeland's "right to challenge the knowing and voluntary nature" of the agreement under the Older Workers Benefit Protection Act ("OWBPA") and the ADEA. *Id.* ¶¶ 4(c), 5.

The OWBPA establishes a number of conditions that must be satisfied before a person may waive her rights or claims under the ADEA. *See* 29 U.S.C. § 626(f)(1)-(2). Those

3

conditions, which will be discussed more fully below, include guarantees that the person has had an opportunity to consult independent counsel and a "reasonable period of time within which to consider the agreement." *Id.* To that end, the settlement agreement here included an acknowledgement that Defendants advised Copeland to "consult her own attorney prior to" accepting the agreement and that Copeland "was afforded a period of twenty-two (22) days to consider [the] Agreement and to decide whether to accept it." Settlement Agreement ¶ 7.

For present purposes, the most critical provision of the agreement is in paragraph 18. This paragraph, labeled "Right to Revoke Agreement," empowered Copeland to revoke the agreement within "a full eight (8) calendar days following her execution of this Agreement." *Id.* ¶ 18. To properly revoke, the agreement states, Copeland "must deliver or cause to be delivered to Kristin Arnold *at the address listed in paragraph 8 of this Agreement* an express written revocation, no later than 11:59 p.m. EDT on the eighth calendar day following the date Ms. Copeland signs this Agreement." *Id.* (emphasis added). Copeland, it says, "acknowledges that this Agreement shall not become effective or enforceable until the effective date, which is the first calendar day after the expiration of the eight-day revocation period described above." *Id.*

Usually, a court is not privy to confidential communications between a client and counsel, but Copeland has filed a series of emails between herself and her appointed counsel which shed some light on what transpired as the deadline to revoke the settlement agreement neared. *See* Copeland Emails 1-7, ECF No. 43-1. In the earliest of these emails, which shows an April 20, 2018, timestamp, Copeland informed her pro bono counsel that there had been a "[g]reat shift in circumstances" on account of new information she had just received "out of the

4

blue" from the U.S. Equal Employment Opportunity Commission ("EEOC").³ *Id.* at 4. The email asked counsel to help her review her options, commenting that she would "rather pay for a good fight" and continue pursuing her claims with the EEOC but would be willing to "settle today at 200k," provided the company "pays half of the cost on the taxes owed to the IRS." *Id.* at 4-5.

An attorney with the firm wrote back an hour later, explaining the steps Copeland would need to take to revoke her assent to the agreement. *Id.* at 3. The email stated:

> If you want to revoke you have [to] deliver or cause to be delivered to Kristin Arnold at EMCOR Government Services, 2800 Crystal Drive, Suite 600, Arlington, VA, 22202, no later than 11:59 p.m. on the eighth calendar day following the date you signed the attached settlement agreement. That means you have until tomorrow night (April 21, 2018) to make the delivery.

*Id.* The email concluded: "We view our involvement in this matter as complete at this time, and so you will have to do this on your own." *Id.* at 3-4.

An hour after that, the attorney emailed Copeland again, apparently memorializing a conversation they had just had by phone. *Id.* at 1. There, the attorney repeated the instructions for revoking assent and advised Copeland to "read [the enclosed agreement] carefully before you act." *Id.* The email noted that the company's offices were likely closed for the day and that it was unclear whether they would be open the next day, a Saturday.⁴ "We expect that [the company] will argue that you did not timely revoke if you deliver it after tomorrow, and you will

---

³ Copeland had filed a charge against Combustioneer with the Prince Georges County Human Relations Commission and the EEOC on June 13, 2016. EEOC Charge, ECF No. 49-3. The charge accused Combustioneer of retaliating against Copeland and of discriminating against her on the basis of her race and disability. *Id.*

⁴ The attorney's email is timestamped April 20, 2018, at 5:23 p.m. Copeland Emails 1. The Court takes judicial notice of the fact that this was a Friday. *See Brown v. Piper*, 91 U.S. 37, 42 (1875) (stating that courts may take judicial notice of "the coincidences of the days of the week with those of the month"); Fed. R. Evid. 201.

5

have to argue that you could not deliver it because the office was closed. We can't opine on whether this will work or not." *Id.*

Importantly, Copeland's attorney added: "You can also try emailing the notice of revocation to Ms. Arnold and Emcor's counsel, *although you should be aware that the agreement requires a physical delivery to Emcor's offices in order to revoke.*" *Id.* (emphasis added).

Copeland emailed Emcor Government Services Vice President of Human Resources Kristin Arnold just before noon on April 21, 2018, the morning of the deadline. Copeland Emails 6. The email stated in part: "Based on a phone call I received from the EEOC unexpectantly on 4/19 I have to revoke the signed settlement agreement at this time." *Id.* The email went on to propose a $200,000 settlement, saying, "This is the only offer I am willing to accept at this time without an attorney. . . . Do not call me to negotiate please." *Id.*

Invoices from a courier service show a courier made an unsuccessful attempt to hand-deliver a written revocation to Emcor Government Services's office in Arlington, Virginia, that afternoon, noting the "place was close[d]." Invoice 8, ECF No. 43-1. A follow-up attempt on April 22, 2018 – the day after the deadline – was successful. *Id.* at 13.

Copeland filed a motion on May 11, 2018, asking the Court to "please reinstate" her case for several reasons. Mot. to Reopen 1, ECF No. 43. The motion explains, first, that the "minimal amount" the parties had initially agreed upon "could not be achieved." *Id.* It next asserts that Copeland signed the agreement "based on the fact that no one could provide me answers regarding additional retaliation charges," but that the subsequent call from the EEOC "left me even more furious about making my initial decision and trying to be humble and just move forward." *Id.* at 1-2. The motion continues to state that, "now that I am in a better state of

mind and my confidence is restored," she would like the Court to dismiss the case without prejudice and "allow [her] to refile [the] case with an attorney please and present all charges at one time." *Id.* at 2.

Defendants soon filed a response in opposition in Copeland's motion, arguing Copeland was bound by the signed settlement agreement. Mot. to Enforce. I explained in a letter order that I construe Defendants' filing as a motion to enforce the settlement agreement and ordered further briefing, June 11 Letter Order, ECF No. 46, which the parties have since provided, *see* Pl.'s Resp. in Opp'n, ECF No. 49; Defs.' Reply, ECF No. 51.

To facilitate my review of the defense's motion, I ordered Defendants to submit to the Court a copy of the settlement agreement. ECF No. 53. Defendants complied. ECF No. 54. Their submission was accompanied by a motion to place the agreement under seal, ECF No. 55, on which I rule below.

**DISCUSSION**

I will first address Copeland's motion to reopen the case. As it is not possible to rule on this motion without scrutinizing the settlement agreement itself, I will consider Defendants' motion to enforce the agreement in tandem with Copeland's motion. Only after ruling on these motions will I turn to Defendants' motion to place the agreement under seal.

**I.**

This Court's April 4, 2018 Settlement Order dismissed Copeland's suit "without prejudice to the right of a party to move for good cause within sixty (60) days to reopen this action if settlement is not consummated." Settlement Order. Copeland – who argues, in effect, that the settlement was never consummated – timely filed her motion to reopen the proceedings on May 11, 2018. Mot. to Reopen 1. To rule on her motion, the Court must assess whether

7

Copeland has shown "good cause" to reopen the case. This is a matter within the Court's discretion. *Collins*, 2010 WL 2892559, at *1.

Copeland's *pro se* response in opposition to Defendants' motion to enforce the settlement agreement supplies four possible bases for declining to enforce the settlement agreement and reopening her case: (1) she should not be bound by an agreement she signed before receiving positive feedback from the EEOC; (2) the pro bono attorneys who represented her in the settlement negotiations engaged in misrepresentation, fraud, and coercion; (3) her attorneys exerted undue influence over her; and (4) the compensation she would receive under the signed agreement is "not commensurate with the offenses that have transpired." Pl.'s Resp. in Opp'n 1-4. I will address these assertions in time. I begin, though, with a more fundamental question, which is whether the settlement agreement is, in fact, enforceable. I consider this a threshold question, because, in my view, a determination that the contract is unenforceable would necessarily constitute "good cause" justifying the reopening of Copeland's case. For this reason, I will now turn my attention to the Defendants' motion to enforce the settlement agreement.

**A.**

A district court has "inherent authority, deriving from [its] equity power, to enforce settlement agreements." *Hensley v. Alcon Labs, Inc.*, 277 F.3d 535, 540 (4th Cir. 2002) (explaining that "resolution of a motion to enforce a settlement agreement . . . may be accomplished within the context of the underlying litigation without the need for a new complaint," even though the motion "draws on standard contract principles"). "When asked to enforce a settlement agreement, a court must first 'ascertain whether the parties have in fact

agreed to settle' and then 'discern the terms of that settlement.'"[5] *Power Servs., Inc. v. MCI Constructors, Inc.*, 36 F. App'x 123, 125 (4th Cir. 2002) (per curiam) (quoting *Moore v. Beaufort Cty.*, 936 F.2d 159, 162 (4th Cir. 1991)).

A settlement agreement is nothing more or less than a contract. *See Topiwala v. Wessell*, 509 F. App'x 184, 186 (4th Cir. 2013) (per curiam). Naturally, then, the question of whether to enforce a settlement agreement is governed by "standard contract principles." *Id.*; *see Hayward v. Brown*, No. PWG-15-3381, 2017 WL 2117364, at *2 (D. Md. May 16, 2017), *aff'd*, 696 F. App'x 102 (4th Cir. 2017) (per curiam) ("Under Maryland law, 'settlement agreements are enforceable as independent contracts, subject to the same general rules of construction that apply to other contracts.'" (quoting *Maslow v. Vanguri*, 896 A.2d 408, 419 (Md. Ct. Spec. App. 2006) (alteration omitted))). Ordinarily, as a matter of Maryland contract law, a party seeking to enforce a settlement agreement "must show (1) offer and acceptance, (2) consideration, and (3) an agreement containing definite and material terms." *Rohn Prods., Int'l v. Sofitel Capital Corp. USA*, No. WDQ-06-0504, 2010 WL 681304, at *3 (D. Md. Feb. 22, 2010) (citing *Cochran v. Norkunas*, 919 A.2d 700, 708 (Md. 2007)). Here, though, these issues are not in dispute. Copeland has not challenged Defendants' assertions that the parties here reached an agreement,

---

[5] The Fourth Circuit has outlined a district court's obligations when reviewing a motion to enforce a settlement agreement:

> [I]f there is a substantial factual dispute over either the agreement's existence or its terms, then the district court must hold an evidentiary hearing. If, however, a settlement agreement exists and its terms and conditions can be determined, as long as the excuse for nonperformance is comparatively unsubstantial, the court may enforce the agreement summarily.

*Swift v. Frontier Airlines, Inc.*, 636 F. App'x 153, 156 (4th Cir. 2016) (per curiam). Here, Copeland does not dispute that she signed the agreement and has not raised any arguments about the agreement's terms, so there is no need for a hearing.

memorialized it in writing, and properly executed it.[6]  She asserts, instead, that the signed agreement is not binding because she revoked her assent within the timeframe specified by the agreement.

Copeland signed the agreement on April 13, 2018.  Settlement Agreement 8.  The agreement's right-to-revoke provision, found in paragraph 18, accorded Copeland "a full eight (8) calendar days following her execution of this Agreement" to effect a revocation.  *Id.* ¶ 18.  Copeland's attorney informed her that to comply with this provision, she would have to revoke her assent to the agreement by 11:59 p.m. on April 21, 2018.  *See* Copeland Emails 3.  This deadline is not in dispute.

Copeland's attorney also explained that the agreement was particular about the means by which Copeland could revoke her assent.  The pertinent provision states: "In order to revoke this Agreement, Ms. Copeland must deliver or cause to be delivered to Kristin Arnold at the address listed in paragraph 8 of this Agreement a written revocation" by the agreed-upon deadline.  Settlement Agreement ¶ 18.  Paragraph 8 identifies a physical street address where Copeland was required to deliver or cause to be delivered her written revocation – specifically, the address of Emcor Government Services's corporate office in Arlington, Virginia.  *Id.* ¶ 8.  It does not list any email addresses or, for that matter, contain any references to electronic communication.

The words "deliver or cause to be delivered" are also not without significance.  Black's Law Dictionary defines "delivery" as "[t]he formal act of voluntarily transferring something;

---

[6] The settlement agreement Defendants filed with the Court bears only one signature – that is, Copeland's.  Settlement Agreement 8.  The Maryland Court of Appeals, though, has left no doubt that "a signature is not required in order to bring a contract into existence, nor is a signature always necessary to the execution of a written contract." *Porter v. Gen. Boiler Casing Co.*, 396 A.2d 1090, 1095 (Md. 1979).  Copeland's attempts to revoke the agreement indicate at the very least that she was under the impression the parties had in fact reached an agreement.  In any event, nowhere in Copeland's submissions to this Court does she argue the agreement was never properly executed.

esp., the act of bringing goods, letters, etc. to a particular person or place." *Delivery*, Black's Law Dictionary (10th ed. 2014). Here, I read the provision the same way Copeland's attorney informed her that he read it. That is to say, Copeland could revoke her assent only via a physical delivery of a written notice to Emcor Government Services's offices in Arlington. *See Sy-Lene of Washington, Inc. v. Starwood Urban Retail II, LLC*, 829 A.2d 540, 546 (Md. 2003) ("[W]hen the language of a contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed." (quoting *Calomiris v. Woods*, 727 A.2d 358, 363 (Md. 1999))).

While Copeland did send Arnold an email purport to revoke her assent to the agreement on the morning of the deadline, this email did not effectuate a revocation within the express terms of the agreement. The invoice from the courier service she hired to make a physical delivery later that same day shows that attempt was unsuccessful. Invoice 8. The courier did ultimately make the delivery, but by that time, the deadline had passed. *Id.* at 13.

The Court of Appeals for the Tenth Circuit encountered similar circumstances in *Woods v. Denver Department of Revenue, Treasury Division*, 45 F.3d 377 (10th Cir. 1995). There, a plaintiff in an ADEA discrimination suit signed a settlement agreement that provided a seven-day window for rescission of the agreement. 45 F.3d at 378. The plaintiff, who had been having second thoughts about the agreement, contacted her attorney on the seventh and final day to tell him she wanted to rescind it, but there was no answer and she was unable to leave a message. *Id.* at 379. She then "called defense counsel at home and left a message on his answering machine indicating that it was an emergency and she wanted him to call her about the case as soon as possible." *Id.* She did not get through to either attorney until the following day, at which point

11

her lawyer explained she was too late. *Id.* The district court, concluding the attempted rescission was ineffective, enforced the agreement, and the Tenth Circuit affirmed. *Id.*

To be sure, Copeland did more than merely notify counsel of her wish to revoke the agreement. Her email to Arnold and her enlistment of the courier company's services leave little doubt that she intended to effect a timely revocation. Intent, though, is not the issue. Copeland was a willing party to a contract. That contract – which imposed more specific requirements than the contract in *Woods* – particularized in clear, simple terms the steps Copeland would have to take to withdraw her assent and render the agreement unenforceable. Copeland did not comply with those terms. This Court can only enforce the agreement; it cannot rewrite it to give one party the benefit of a more favorable bargain that the one into which she entered. *See Calomiris*, 727 A.2d at 369 ("Contracts play a critical role in allocating the risks and benefits of our economy, and courts generally should not disturb an unambiguous allocation of those risks in order to avoid adverse consequences for one party.").

**B.**

This is not the end of the inquiry, because, as Defendants rightly observe, the laws supplying the bases for Copeland's claims entitle her to special protections. Of these statutes, the most protective is the ADEA. This statute, as amended by the OWBPA, 29 U.S.C. § 626(f), bars a person from waiving his or her rights under the ADEA "unless the waiver is knowing and voluntary." 29 U.S.C. § 626(f)(1); *see Adams v. Moore Bus. Forms, Inc.*, 224 F.3d 324, 327 (4th Cir. 2000). In general, a waiver is not knowing and voluntary "unless at a minimum—

> (A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;
> (B) the waiver specifically refers to rights or claims arising under this chapter;

> (C) the individual does not waive rights or claims that may arise after the date the waiver is executed;
> (D) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual is already entitled; [and]
> (E) the individual is advised in writing to consult with an attorney prior to executing the agreement . . . .

29 U.S.C. § 626(f)(1)(A)-(E). Beyond that, a waiver in a settlement agreement is not considered knowing and voluntary unless "the individual is given a reasonable period of time within which to consider the settlement agreement."[7] *Id.* § 626(f)(2); *see Neely v. Miller Brewing Co.*, 25 F. App'x 370, 373 (6th Cir. 2002). The statute does not specify a minimum time period that would be considered "reasonable." *See Neely*, 25 F. App'x at 373.

Under the OWBPA, "the party asserting the validity of a waiver shall have the burden of proving in a court of competent jurisdiction that [the] waiver was knowing and voluntary." 29 U.S.C. § 262(f)(3). Here, Defendants note that the agreement promised Copeland compensation in exchange for a limited waiver, which released Copeland's claims arising before, but not after, the agreement's execution. *See* Settlement Agreement ¶ 4. Copeland was represented in settlement talks by court-appointed counsel. The agreement was written in clear, comprehensible language and entitled Copeland to compensation in exchange for the waiver of her rights (notwithstanding her *ex post* objection that the dollar figure should have been higher). As signed by Copeland, the agreement includes acknowledgments that (1) Defendants advised her to consult independent counsel prior to executing the agreement, (2) "she was afforded a period of twenty-two (22) days to consider this Agreement and to decide whether to accept it," and (3) "to the extent she decided to sign [the] Agreement prior to the expiration of the full

---

[7] Subsections (f)(1)(F) and (G) provide that a person agreeing to a waiver must have at least 21 days to consider the agreement and at least seven days to revoke the agreement after its execution. *See* 29 U.S.C. § 626(f)(1)(F)-(G). Subsection (f)(2), which governs waivers that appear in settlement agreements, is not as particular.

13

twenty-two (22) day period, such decision was knowing and voluntary on her part and was in no way coerced by Combustioneer or the individual Defendants." Settlement Agreement ¶ 7. And, of course, as previously discussed, the agreement allowed Copeland to back out of the bargain up to eight days after signing it. *Id.* ¶ 18.

None of this is in dispute. In reviewing Copeland's motion to reopen the case and her response in opposition to the defense's motion to enforce the settlement, it seems the crux of her argument on this issue is that her attorneys pressured her to accept the proposed agreement. Specifically, she alleges that counsel was unresponsive or dismissive when she suggested that passages in the EEOC Enforcement Guidance Manual supported her case and that they only reached out to her "a week or so prior to any scheduled conference call." Resp. in Opp'n 2-3. She further alleges that counsel advised her to "hurry up and make a decision" and told her she "would never see $100,000 all at once in [her] lifetime and to take it." *Id.* at 3.

Copeland's emails to her attorney and Arnold tell a different story. These emails in no way suggest that Copeland felt pressure to sign the agreement or was not thinking clearly when she did. Rather, they indicate she came to regret signing the agreement only after the EEOC contacted her on April 19, 2018. *See* Copeland's Emails 4 (saying the EEOC's call had created a "[g]reat shift in circumstances"); *id.* at 6 (saying her decision to revoke was "[b]ased on a phone call I received from EEOC"). Similarly, in her motion to reopen the case, Copeland explains that she signed the agreement because she did not know whether the EEOC would be receptive to her claims. Mot. to Reopen 1. It was only after hearing from the EEOC that her "confidence [was] restored" and she decided she would rather "fight this fight" than accept the deal. *Id.* at 2.

In short, Copeland does not deny that the circumstances here satisfy the minimum requirements under § 626(f), nor does she present compelling reasons to conclude her decision to

14

waive her rights was anything less than "knowing and voluntary." I am satisfied this agreement did not deny Copeland the protections the OWBPA guarantees.

I likewise conclude that the waivers of Copeland's rights under other federal civil rights statutes were knowing and voluntary. *See Glass v. Rock Island Ref. Corp.*, 788 F.2d 450, 454 (7th Cir. 1986) (discussing the requirement that a waiver of rights under Title VII must be knowing and voluntary). For these statutes, the court applies a "totality of the circumstances" test. *See Cassiday v. Greenhorne & O'Mara, Inc.*, 220 F. Supp. 2d 488, 493 (D. Md. 2002), *aff'd*, 63 F. App'x 169 (4th Cir. 2003) (per curiam); *see also Bachiller v. Turn On Prods., Inc.*, No. 00 Civ. 8701(JSM), 2003 WL 1878416, at *3-4 (S.D.N.Y. Apr. 14, 2003), *aff'd*, 86 F. App'x 465 (2d Cir. 2004). In the Title VII context, courts have identified at least seven factors that may bear on the analysis:

> (1) the employee's education and business experience; (2) the respective role of the employer and employee in determining the terms and conditions of the waiver; (3) the clarity of the agreement; (4) the time the employee had to study the agreement; (5) whether the employee had the advice of counsel; (6) whether the employer encouraged the employee to seek the advice of counsel and whether the employee had sufficient time to do so; and (7) the waiver's consideration.

*Cassiday*, 220 F. Supp. 2d at 493 (citing *Melanson v. Browning-Ferris Indus., Inc.*, 281 F.3d 272, 276 n.4 (1st Cir. 2002)). This list is non-exhaustive. *Id.*

Here, the Complaint indicates that Copeland has a college education and at least 12 years of business experience. Compl. 8. She was represented by counsel during the settlement talks and evidently engaged in substantive discussions with her attorney over the course of multiple meetings. *See* Resp. in Opp'n 3. As I have already noted, Defendants advised her to consult her attorney and gave her ample time to decide whether to accept the proposed agreement. The agreement promised consideration in exchange for the waiver, and while Copeland has since

15

come to view the sum as inadequate, her emails to counsel and Arnold suggest she was content to accept the deal until the EEOC reached out to her with new information six days after she signed the agreement. *See* Copeland Emails 4-6. Viewing these facts under the totality of the circumstances, I conclude Copeland waived her rights knowingly and voluntarily.

## C.

In her response in opposition to the defense's motion, Copeland puts forward a series of reasons why the Court should decline to enforce the settlement agreement. These can be boiled down to three arguments: (1) her attorneys pressured her to take the deal; (2) she would not have signed the agreement if she had known the EEOC would accept her claims; and (3) the terms of the final agreement were not adequate. I do not find any of these arguments persuasive.

Generally speaking, it is beyond a party's power to rescind a valid contract unless the agreement reserves that option or the other party consents to the rescission. *See Janusz v. Gilliam*, 947 A.2d 560, 566-67 (Md. 2008). However, a contract "may be subject to rescission on a finding of fraud, duress, undue influence, or negligent misrepresentation." *Hale v. Hale*, 503 A.2d 271, 274 (Md. Ct. Spec. App. 1986).

Copeland has not identified any false representations made in the course of the settlement talks in this case. Her assertion that her attorney encouraged her to accept the proposal, suggesting she was unlikely to see a better deal, does not sound in fraud or any other ground for rescission of a binding contract. *See Dern v. Liberty Mut. Ins. Co.*, No. GJH-15-1737, 2017 WL 2257333, at *1-2 (D. Md. May 22, 2017) (enforcing a settlement agreement in spite of the plaintiff's claims that her attorney provided ineffective representation and both threatened and intimidated her). It most certainly falls short of undue influence, which necessitates an exertion

of "unlawful influence . . . to such a degree as to amount to force or coercion, destroying free agency." *Zook v. Pesce*, 91 A.3d 1114, 1123-24 (Md. 2014).

Copeland's other arguments fare no better. It may well be that she no longer views the agreed-upon dollar figure as adequate, but mere second thoughts are not grounds for vitiating an enforceable agreement. *See Lopez v. XTEL Constr. Grp., LLC*, 796 F. Supp. 2d 693, 699 (D. Md. 2011) ("The fact that a party may have second thoughts about the results of a valid settlement agreement does not justify setting aside an otherwise valid agreement." (quoting *King v. Sallie Mae, Inc.*, No. PJM 08-2934, 2009 WL 2596643, at *3 (D. Md. Aug. 20, 2009))).

The Maryland Court of Appeals has observed: "[O]ne of the most commonsensical principles in all of contract law [is] that a party that voluntarily signs a contract agrees to be bound by the terms of that contract." *Walther v. Sovereign Bank*, 872 A.2d 735, 746 (Md. 2005). Copeland, who knowingly and voluntarily entered into an agreement and then failed to revoke her assent in accordance with its explicit terms, is bound by the terms of the agreement she signed. Defendants' motion to enforce the settlement agreement, ECF No. 45, will be granted.

## II.

I turn now to Defendants' motion to place the settlement agreement under seal, ECF No. 55.

A motion to place court documents under seal pits the parties' privacy interests against the public's right to an open judicial system. *See Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014). While both the common law and the First Amendment guarantee a "qualified right of access to judicial documents and records," *id.*, there are circumstances in which a court may place certain records under seal, *see, e.g.*, *Pittston Co. v. United States*, 368 F.3d 385, 406 (4th Cir. 2004) (affirming the denial of a motion to unseal documents containing "confidential,

proprietary, commercial, or financial data" (internal quotation marks omitted)). Local Rule 105.11 recognizes the court's authority to seal records upon a motion, provided the motion supplies a fact-based justification for the sealing and explains "why alternatives to sealing would not provide sufficient protection." Loc. R. 105.11.

Defendants note the settlement agreement Copeland signed on April 13, 2018, contained a confidentiality provision. This Court has made clear, though, that "[t]he presence of a confidentiality provision is not itself a sufficient reason to seal a settlement agreement." *Fonseka v. AlfredHouse ElderCare, Inc.*, No. GJH-14-3498, 2015 WL 3457224, at *2 (D. Md. May 28, 2015).

That said, it is not the case that all settlement agreements filed in a district court must remain fully accessible to the public. In *Johnson v. City of Baltimore Development Corp.*, the district court declined to seal those portions of a settlement agreement that were germane to its decision on a motion to compel enforcement of the agreement, but retained the remainder of the agreement under seal. No. CLR-11-2174, 2013 WL 3934022, at *4-5 (D. Md. July 29, 2013). I will do the same here. Accordingly, Defendants' motion to seal the agreement is granted,[8] but with the caveat that the recital; paragraphs 4, 5, 7, 8, 15, and 18; and the signature page shall be unsealed. I direct Defendants to submit a redacted version of the agreement within 14 days of the date of this Memorandum Opinion and Order.

---

[8] To give interested parties time to object to a motion to seal, Local Rule 105.11 provides that a Court "will not rule upon the motion until at least fourteen (14) days after it is entered on the public docket." Loc. R. 105.11. Here, Defendants filed their motion on October 25, 2018. As the requisite waiting period has not yet passed, the Court's ruling on this motion is subject to reconsideration in the event an interested party files an objection within 10 days of the date of this Memorandum Opinion and the accompanying Order.

## CONCLUSION

Copeland knowingly and voluntarily executed an agreement to waive her rights under various statutes. While the agreement contemplated the possibility that she might revoke her assent within a set time period, her attempts to effect a revocation did not comply with the agreement's express terms and were therefore ineffective. Accordingly, the Court GRANTS Copeland's motion to reopen the case, but only for the limited purpose of ruling on Defendants' motion to enforce the settlement agreement. The Court GRANTS the defense's motion. The Court also GRANTS IN PART AND DENIES IN PART Defendants' motion to place the settlement agreement under seal. The Court directs Defendants to submit a redacted version of the agreement in accordance with this Memorandum Opinion.

A separate order will follow.

Date: October 30, 2018                                    /S/
                                                     Paul W. Grimm
                                                     United States District Judge